# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Lawonda C. Harris,

        Plaintiff,                         Case Action No.: 1:09cv448

        v.                              Judge Michael R. Barrett

Commissioner of Social Security,

        Defendant.

## <u>ORDER</u>

This is a Social Security appeal brought under 42 U.S.C. § 405(g).  Before the Court is Magistrate Judge J. Gregory Wehrman's August 6, 2010, Report and Recommendation ("Report") (Doc. 9).  In the Report, Magistrate Judge Wehrman recommends that the Administrative Law Judge's ("ALJ") non-disability finding be found supported by substantial evidence and affirmed.

The parties were given proper notice, pursuant to 28 U.S.C. § 636(b)(1)(C), including notice that the parties would waive further appeal if they failed to file objections to the Report in a timely manner.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).[1]  Plaintiff filed timely Objections to the Report (Doc. 10).  There was no Response from Defendant.

For the reasons stated below, the Court overrules Plaintiff's Objections and the Report is ADOPTED.  Accordingly, the Commissioner's decision is AFFIRMED.

---

[1] A notice was attached to the Report regarding objections.  (Doc. 9, 18.)

**I.     Background**

The Report, supplemented by the ALJ's decision, accurately details the facts and procedural history of this case.  (*See* Doc. 9, 1–4; Tr. 18–35.)  They will not be repeated here.

On appeal, Plaintiff maintains the following objections: (1) the Magistrate Judge erred by not concluding that the ALJ's use of an improper standard of law was prejudicial (Doc. 10, 2); (2) the Magistrate Judge and ALJ erred in the weight given to Plaintiff's treating physicians and in the ALJ's failure to explain his mental RFC determination (Doc. 10, 3); (3) the Magistrate Judge and ALJ erred by not finding carpal-tunnel-syndrome limitations (Doc. 10, 7); and (4) the Magistrate Judge and ALJ erred in evaluating Plaintiff's credibility (Doc. 10, 8).  Each of these will be addressed in turn.

**II.    Analysis**

**A.     Standard of Review**

When objections are received to a magistrate judge's Report and Recommendation on a dispositive matter, the district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id*; *see also* 28 U.S.C. § 636(b)(1).  General objections are insufficient to preserve issues for review; "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object."

2

*Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

The Court's review of the Social Security Commissioner's decision is limited to determining whether the findings are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 521 (6th Cir. 2008) (internal quotations omitted).

The substantial evidence standard presupposes that "there is a zone of choice within which the [ALJ] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (internal citations omitted) (*quoting Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). This "zone of choice" includes resolving conflicts in the evidence and deciding questions of credibility. *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987). Consequently, this Court should defer heavily to such findings. *See Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994). If substantial evidence supports the ALJ's finding of non-disability, that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky*, 35 F.3d at 1035 (*citing Mullen*, 800 F.2d at 545). However, even where there is substantial evidence, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*

*Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (*quoting Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

The Social Security Act defines disability as the inability to do any substantial gainful activity because of any medically determinable physical or mental impairment that can result in death or that can last at least twelve months.  20 C.F.R. § 404.1505(a).  Disability claims are evaluated under a five-step sequential process.  20 C.F.R. § 404.1520(a)(4).  The burden of proof is on the claimant through the first four steps; the burden shifts to the Social Security Administration in step five.  *Preslar v. Sec'y Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).  However, the claimant bears the ultimate burden of proving that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).

Step one of the sequential process determines whether the claimant is engaging in substantial gainful activity.  If not, the inquiry moves to step two, which determines whether the claimant's impairments, individually or in combination are "severe."  If a severe impairment is found, step three asks whether the claimant's impairment meets or medically equals the requirements of any impairment in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the claimant's impairment is not of listing-level severity, then step four asks whether the claimant has the residual functional capacity ("RFC") to perform past relevant work.  If the claimant shows that she cannot perform past relevant work because of impairments, the Social Security Administration, in step five, must then identify other jobs existing in significant numbers in the national economy that the claimant can perform.  20 C.F.R. § 404.1520(a)(4).  If at any point it is determined that the claimant is or is not disabled, the inquiry stops.  *Id.*

**B.     First Objection**

Plaintiff's first objection maintains that the ALJ used an improper standard of law, and the Magistrate Judge erred by not ruling that this mistake was prejudicial. (Doc. 10, 2.) Specifically, the ALJ used the "substantial evidence" standard where he should have used the "preponderance of the evidence" standard under 20 C.F.R. § 404.901. The Magistrate Judge considered this same question. He found that the ALJ's error was harmless. (Doc. 9, 5–7.)

Plaintiff counters that the error was not harmless because it affected the way the ALJ evaluated Plaintiff's credibility. Plaintiff notes that Dr. Semmelman, a reviewing psychologist, stated that, "[c]laimant is considered credible." (Doc. 10, 3; Tr. 520.) Plaintiff implies that because Dr. Semmelman found her to be credible, and because the ALJ relied on Dr. Semmelman's opinion and give it significant weight, the ALJ should have found Plaintiff to be credible as well. This argument is not well taken. First, determinations of credibility are within the discretion of the ALJ. *Felisky*, 35 F.3d at 1036. The ALJ was not bound to follow Dr. Semmelman's opinion on the issue of Plaintiff's credibility. Second, as is discussed below in relation to Plaintiff's fourth objection, the ALJ properly evaluated Plaintiff's credibility and that finding is entitled to deference. *Gaffney*, 825 F.2d at 100 ("[T]he court may not . . . decide questions of credibility.").

Plaintiff next argues that the ALJ's error was not harmless because of his evaluation of Plaintiff's activities of daily living and the severity of Plaintiff's mental impairments. (Doc. 10, 3.) Other than this conclusory statement though, Plaintiff fails to explain how this prejudiced her. As the Magistrate Judge recognized (Doc. 9, 6), "the

5

burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 129 S. Ct. 1696, 1706 (2009).  Plaintiff has argued that the ALJ used an improper standard of law throughout these proceedings and has had numerous opportunities to demonstrate how this error was prejudicial.  (*See* Docs. 4, 7, & 10.)  Despite these many opportunities, Plaintiff has repeatedly failed to show how the ALJ's use of an improper standard of law has prejudiced her.  The ALJ addressed this properly byfinding that "[t]he ALJ's misstatement of the appropriate standard of review was just that—a misstatement—and not an incorrect application of the appropriate standard." (Doc. 9, 7.)  Thus, because the ALJ's misstatement as to the appropriate standard of review was harmless error, Plaintiff's first objection is overruled.

### C.      Second Objection

Plaintiff's second objection maintains that the Magistrate Judge and ALJ erred in the weight given to Plaintiff's treating physicians and in the failure of the ALJ to explain his mental RFC determination.  (Doc. 10, 3.)  Plaintiff makes several specific arguments within this overall objection.

### 1.      The "Controlling Weight" Standard

Plaintiff first argues that, "[t]he Magistrate Judge erred . . . when he only used the 'controlling weight' standard . . . ."[2]  (Doc. 11, 3.)  Plaintiff maintains that this was an error of law because, "[e]ven if the treating source is not entitled to 'controlling weight,'

---

[2] Plaintiff is unclear on this point, but because of the relevant sections of the Report Plaintiff cites to, the Court must assume that Plaintiff means Ms. Drais where she refers to "the treating psychiatrist."  Note, however, that Ms. Drais is not in fact a psychiatrist.  Instead, she is a counselor at the Highview Center who the ALJ consistently refers to as the "treating mental health professional."  (Tr. 22, 24, & 26; Tr. 560, 565.)  As will be seen below, such confusions of nomenclature are a recurring theme throughout Plaintiff's Objection.

in many instances the treating source is entitled to the 'most weight' in the record under Ruling 96-2p (1996)." (Doc. 10, 3.) Here, Plaintiff references *Roush v. Commissioner*, 326 F. Supp. 2d 858, 867–68 (S.D. Ohio 2004), which states: "a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record *means only* that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected.*" *Id.*

Magistrate Judge Wehrman's Report references "controlling weight" in his discussion of the opinion of Ms. Drais, Plaintiff's counselor. (Doc. 9, 9.) The Magistrate Judge stated as follows:

> The ALJ . . . declined to give controlling weight to the opinion of Ms. Drais. The ALJ indicated that Ms. Drais' opinion was neither well-supported nor consistent with other substantial evidence. Notably, it was contradicted by the overwhelming bulk of other evidence from acceptable medical sources. As the ALJ pointed out, no psychiatrist or psychologist found any limitations even approaching the extreme degree suggested by Ms. Drais.
>
> The ALJ further explained that Ms. Drais's finding of marked limitations was contradicted by other facts in the record, including Plaintiff's own statements to Dr. Rosenthal about her activities of daily living as well as the results of Dr. Rosenthal's clinical testing. Notably, Ms. Drais acknowledged that she had never conducted a mental status examination, and was relying in large part on Plaintiff's subjective allegations.

(Doc. 9, 9–10) (footnote and citations omitted.) Plaintiff's argument that Ms. Drais' opinion is entitled to "the most weight" is not well taken. The Magistrate Judge's above analysis makes this clear. But more importantly, as the Magistrate Judge noted, "Social Security Ruling 06-03p explicitly sets forth that counselors are not considered an acceptable medical source under the regulations." (Doc. 9, 9, n.5) (*citing* 20 C.F.R. §§

404.1502, 404.1513(a).)  Because Ms. Drais is not a licensed physician, psychologist, optometrist, podiatrist, or qualified speech-language pathologist, she is not an "acceptable medical source[ ] to establish whether [a claimant has] a medically determinable impairment[ ]."  20 C.F.R. § 404.1513(a).  As Social Security Ruling 06-03p states, "counselors . . . cannot establish the existence of a medically determinable impairment."  Soc. Sec. Rul. 06-03p, at *2 (available at 2006 WL 2329939).

Plaintiff continues this objection by arguing that it is a mistake as a matter of law to conclude that Ms. Drais was not a qualified treating source under 20 C.F.R. § 404.1502.  Plaintiff states that "the form at Tr. 560–565 [Ms. Drais' Mental Impairment Questionnaire] was signed and reviewed  . . . by psychologist Y. Butikofen, a Ph.D. . . ."  (Doc. 10, 6.)  Dr. Butikofen's signature appears below Ms. Drais'.  (Tr. 565.)  Nonetheless, this argument misses the mark.  Regardless of who may have signed the report in addition to Ms. Drais, the fact remains that Ms. Drais provided Plaintiff's treatment, and she drafted the report in question.  Dr. Butikofen did neither—he merely provided "clinical supervision."  (Tr. 565.)  For this and the other foregoing reasons, Plaintiff's objection that the Magistrate Judge used the controlling weight standard improperly is overruled.

### 2.    The RFC for Depression Determination

Next, Plaintiff argues that the ALJ's RFC for depression determination was in error because the ALJ did not properly consider the opinion of Dr. Alshami, Plaintiff's treating psychiatrist.[3]  (Doc. 10, 4.)  More specifically, Plaintiff argues that because the

---

[3] Note that Plaintiff consistently refers to a "Dr. Ashmani."  (Doc. 10, 4–5.)  Because the Court finds no mention of a "Dr. Ashmani" in the record, and because Dr. Alshami was the "treating psychiatrist" Plaintiff references when discussing "Dr. Ashmani" (Doc. 10, 3), this Court assumes that where Plaintiff states "Dr. Ashmani" she intends to reference Dr. Alshami.

ALJ did not note that Dr. Semmelman's and Ms. Drais' opinions occurred before Dr. Alshami began treating Plaintiff, the ALJ erred as a matter of law under Social Security Ruling 96-6p.  Plaintiff also maintains that the Magistrate Judge erred as a matter of law for not dealing with this argument.  Assuming arguendo that the Magistrate Judge failed to address this specifically, this Court finds that it was harmless error because Plaintiff's argument here is unavailing.

Social Security Ruling 96-6p clarifies the policy regarding the consideration of opinions of State agency consultants and psychologists.  *Id.* at *1 (available at 1996 WL 374180).  It states that '[i]n appropriate circumstances, opinions from State agency medical . . . consultants . . . and psychologists may be entitled to greater weight than the opinions of treating or examining sources."  *Id.* at *3.  For example, this may be true if "the State agency medical . . . consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source."  *Id.*  This, however, is just an example.  This is not meant as a hard and fast rule that no State agency reviewer's opinion can be can be given greater weight than a treating source where there is not a review of a complete case record.  *See id.*  Social Security Ruling 96-6p goes on to state that "assessments by State agency medical . . . consultants . . . . are to be evaluated considering all of the factors set out in the regulations for considering opinion evidence."  *Id.* at *4.

As is stated in *Roush v. Commissioner*, 326 F. Supp. 2d 858, 867–68 (S.D. Ohio 2004), "[t]reating source medical opinions . . . must be weighed using all of the factors

9

provided in 20 CFR 404.1527 and 416.927." *Id.* at 868.  The factors listed in weighing a treating source's opinion include the examining relationship, the treatment relationship (which includes the length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship), the supportability of an opinion, the consistency of an opinion, the treating source's area of specialization, and "[o]ther factors."  20 C.F.R. §§ 404.1527(d)(1)–(6), 416.927(d)(1)–(6).  Neither the Magistrate Judge nor the ALJ erred in using these factors to weigh the opinion of Dr. Alshami, as Plaintiff contends (Doc. 10, 5).

To start, it must be noted that the ALJ found that Plaintiff's primary limiting impairments were obesity and history of substance abuse.  (Tr. 29.)  While the ALJ did find that Plaintiff's depressive disorder was a "severe impairment" within the meaning of the Social Security Act (Tr. 27), he also found that it was magnified by her history of alcohol and drug abuse (Tr. 31–32.)  After a long discussion of the relationship between Plaintiff's substance abuse and depression (Tr. 31–32), the ALJ concluded as follows:

> The claimant has not presented convincing substantial evidence to establish that she has mental impairment [that] would prevent her from performing all manner of competitive work activity.  Despite her documented impairment of affective disorder, the claimant should be capable of performing simple repetitive tasks with occasional work setting and routine changes, no strict time standards or production quotas, and only predictable duties. . . . Restricting the claimant non-exertionally . . . adequately addresses any and all limitations which may be associated with the claimant's potentially alcohol/drug-influenced depression.

(Tr. 32.)

The Magistrate Judge agreed with this assessment by concluding that "the ALJ reasonably relied on all the evidence in the record to determine that Plaintiff's mental

10

impairment limited her ability to do basic work activities.  The ALJ accommodated those limitations in his RFC determination, and provided sufficient analysis regarding those limitations.  (Tr. 22–28, 31–34)." (Doc. 9, 10–11.)

After a thorough review of all Dr. Alshami's records (Tr. 556–59; 587–88), and considering the above listed factors of weighing a treating source's opinion,[4] this Court cannot agree with Plaintiff's contention that Dr. Alshami's opinion was improperly weighed.  To start, the record shows that Dr. Alshami only treated Plaintiff from September 26, 2007, through April 14, 2008 (Tr. 6), and during that time, he only saw her on four occasions—September 26, 2007, November 7, 2007, January 7, 2008, and April 14, 2008 (Tr. 556–59; 587–88).  This is a short period of treatment considering that Plaintiff's alleged onset of disability date was October 14, 2003.  (Tr. 18.)  This short length of treatment relationship and the infrequent examinations both justify decreasing the weight Dr. Alshami's opinion deserves.  Additionally, Dr. Alshami's treatment notes consistently observed that Plaintiff's activity levels were average (Tr. 556, 587), her thought process was logical (Tr. 556, 558, 587, 588), there was no reported self abuse, hallucinations, or delusions (Tr. 556, 558, 587, 588), her cognition was normal (Tr. 556, 558, 587, 588), her insight and judgment were good (Tr. 556, 557, 587, 588), and she had a Global Assessment of Functioning ("GAF") score of 50 (Tr. 559), which was similar to the GAF score of 60 that Dr. Rosenthal assigned.[5]  Finally, Dr. Alshami noted

---

[4] The factors considered in weighing a treating source's opinion include the examining relationship, the treatment relationship (which includes the length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship), the supportability of an opinion, the consistency of an opinion, the treating source's area of specialization, and "[o]ther factors."  20 C.F.R. §§ 404.1527(d)(1)–(6), 416.927(d)(1)–(6).

[5] The GAF scale is used to report a clinician's judgment of an individual's overall level of functioning.  A GAF score of 51–60 indicates moderate symptoms whereas a score of 50-41 indicates serious symptoms.  *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (American Psychiatric Ass'n, 4th ed. text rev. 2000) (DSM-IV-TR)

that when he last saw her on April 14, 2008, Plaintiff was showing signs of improvement and maintaining function while on medication—medication being the only treatment Dr. Alshami provided.  (Tr. 587.)

As the Magistrate Judge recognized, (Doc. 9, 10–11), this Court notes that the ALJ did not discount Dr. Alshami's opinion entirely.  Rather, he gave it the consideration it was due by concluding that "[r]estricting the claimant non-exertionally . . . adequately addresses any and all limitations which may be associated with the claimant's potentially alcohol/drug-influenced depression."  (Tr. 32.)  Thus, Plaintiff's objection that the ALJ's RFC for depression determination was in error is overruled.

### 3.  "Good Reasons"

As part of her second objection, Plaintiff also argues that the ALJ failed to give "good reasons" for discounting Dr. Alshami's opinion.  Title 20 C.F.R. § 404.1527(d)(2) states that the ALJ "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  Social Security Ruling 96-2p explains what "good reasons" are where it states that a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  Soc. Sec. Rul. 96-2p, at *5 (available at 1996 WL 374188).  Here, Plaintiff's objection is well taken. Although it is easy to see that the ALJ considered Dr. Alshami's notes based on his RFC determination, especially in relation to the restrictions the ALJ added to that RFC determination, this Court recognizes that the ALJ did not specifically mention Dr.

Alshami or specifically refer to his treatment notes in his decision.  Furthermore, the ALJ did not give specific reasons for the weight given to Dr. Alshami's opinions in a sufficiently clear manner such that subsequent reviewers can assess the ALJ's reasoning.

"If the ALJ fails to give good reasons for rejecting the opinion of a treating physician, the error is reversible and requires a remand for further proceedings, unless the error is harmless."  *Payne v. Comm'r of Soc. Sec*, No. 08-4706, 2010 WL 4810212, slip op. at *2 (6th Cir. Nov. 18, 2010) (*citing Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544–46 (6th Cir. 2004)).  "Violation of the [good reasons] rule constitutes harmless error if the ALJ has met the goals of the procedural requirement—to ensure adequacy of review and to permit the claimant to understand the disposition of his case—even though he failed to comply with the regulation's terms."  *Coldiron v. Comm'r of Soc. Sec.*, No. 09-4071, 2010 WL 3199693, slip op. at * (6th Cir. Aug. 12, 2010) (*citing Wilson*, 378 F.3d at 547).

With this guidance from the Sixth Circuit in mind, the requirement of giving "good reasons" is, in part, meant to allow a claimant to understand the disposition of his or her case.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  This applies with particular force "in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'"  *Id.* at 544 (*citing Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).  This is not one of those situations.  Dr. Alshami conveyed no opinion regarding Plaintiff's disability—he never deemed Plaintiff disabled.  Thus, the policy behind the

13

requirement for "good reasons" does not apply here.  The only thing that Dr. Alshami

contributed to the record is his treatment notes.  (Tr. 556–59; 587–88.)  Other than the

diagnosis that Plaintiff' suffers from a "major depressive disorder" (Tr. 559), a fact that

the ALJ considered (Tr. 32), Dr. Alshami gave no relevant opinions.  As such, "the

opinion of a treating physician" was not rejected by the ALJ.  *See Payne*, 2010 WL

4810212, slip op. at *2.  Following the Sixth Circuit's decision in *Coldiron*, the ALJ's

omission here was harmless error because the goal of allowing Plaintiff to understand

the disposition of his case has been met.  *Coldiron*, 2010 WL 3199693, slip op. at *4.

The second reason for the "good reasons" requirement is that it "ensures that the

ALJ applies the treating physician rule and permits meaningful review of the ALJ's

application of the rule."  *Wilson*, 378 F.3d at 544 (*citing Halloran v. Barnhart*, 362 F.3d

28, 32–33 (2d Cir. 2004)).  This justification does not apply here either given the

preceding and following analyses, which show that this Court has been able to do a

meaningful review of the ALJ's application of the rule.  Again, as the Sixth Circuit in

*Coldiron* directed, the harmless error rule applies here because the ALJ has met the

goal of ensuring an adequate review.  *Coldiron*, 2010 WL 3199693, slip op. at *4

The final reason why the ALJ's omission was harmless error is reflected in the

content of Dr. Alshami's treatment notes.  As the Court analyzed above, nothing in

those treatment notes conflicts with the ALJ's final determination of non-disability.  In

the above analysis, this Court specifically noted the following as good reasons for why

Dr. Alshami's treatment notes do not warrant a finding of disability: the shortness and

infrequency of the treatment relationship; Dr. Alshami's notes were consistent with the

findings of the consulting physicians (in relation to the GAF score and the specific

observations about Plaintiff's thought process, insight, judgment, etc.), and; "other factors"—the fact that Plaintiff's condition was improving under medication. *See* 20 C.F.R. §§ 404.1527(d)(1)–(6), 416.927(d)(1)–(6). Additionally, Dr. Alshami provides no objective basis for his conclusions. (*See* Tr. 556–59; 587–88) (A treating physician's opinion will not be given controlling weight unless it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(d)(2).) These are the "good reasons" the regulations require. *See* Soc. Sec. Rul. 96-2p, at *5 (available at 1996 WL 374188); 20 C.F.R. §§ 404.1527(d)(1)–(6), 416.927(d)(1)–(6). The ALJ should have included a specific reference to Dr. Alshami's treatment notes in his decision, but the failure to do so was harmless error.

This conclusion is reinforced by a comparison of *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528 (6th Cir. 2000) and *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541(6th Cir. 2004). In *Heston*, the Sixth Circuit found that the ALJ's failure to reference a treating physicians' medical history report was harmless error. The *Heston* court reviewed the report in question, and among other things, it found that that the report did not provide an objective basis for the physician's conclusions. *Heston*, 245 F.3d at 535–36. In contrast, the Sixth Circuit in *Wilson* remanded that case because the ALJ did not consider an opinion that found greater restrictions on the claimant's ability to work. *Wilson*, 378 F.3d at 545.

The instant case is much more like *Heston* given that Dr. Alshami expressed no opinion about Plaintiff's ability to work. Also, as occurred in *Heston*, the ALJ here considered the limitations described by Dr. Alshami in his RFC determination despite the fact that he did not reference Dr. Alshami by name or cite to his treatment notes.

15

*Heston*, 245 F.3d at 536; *see also Wilson*, 378 F.3d at 547–48 ("Despite his failure to

address the treating physician's opinion, the ALJ in *Heston* had considered the

limitations described by that physician in determining whether the claimant could find

other work at the relevant step of the sequential analysis.")

For the foregoing reasons, the ALJ's failure to mention Dr. Alshami specifically,

his failure to refer specifically to the treatment notes, and his failure to give specific

reasons for the weight given to those notes, were all harmless error.  Thus, Plaintiff's

objection that the ALJ failed to give "good reasons" for discounting Dr. Alshami's opinion

is overruled.

### 4.    "Narrative Discussion"

Plaintiff's final argument within her second objection is that the ALJ "erred under

Social Security Ruling 96-8p . . . in not explaining, in narrative form, how he arrived at

his mental residual functional capacity so that this can now be reviewed, and the

Magistrate Judge also erred on this."  (Doc. 10, 6.)  The Magistrate Judge thoroughly

dealt with this same argument with the following:

> Plaintiff's assertion that the ALJ failed to comply with Social
> Security Ruling 96-8p is unavailing.  Ruling 96-8p requires
> that the ALJ's RFC assessment "include a narrative
> discussion describing how the evidence supports each
> conclusion, citing specific medical facts (*e.g.*, laboratory
> findings) and nonmedical evidence (*e.g.*, daily activities,
> observations)."  Here, the ALJ reasonably relied on all the
> evidence in the record to determine that Plaintiff's mental
> impairment limited her ability to do basic work activities.  The
> ALJ accommodated those limitations in his RFC
> determination, and provided sufficient analysis regarding
> those limitations.  (Tr. 22-28, 31-34).

(Doc. 9, 10–11.)  This Court agrees with this conclusion.  The ALJ engaged in an

extended narrative discussion of his RFC assessment (Tr. 29–34), he described how

the evidence supported his conclusions (*see e.g.* Tr. 31), he cited to specific medical

facts (*see e.g.* Tr. 30), and he cited to extensive nonmedical evidence (*see e.g.* Tr. 33).

Plaintiff's bald assertion to the contrary is unavailing.

 In relation to this argument about the narrative discussion, Plaintiff also contends

that because the ALJ found "moderate limitations on persistence, pace, and

concentration," Plaintiff cannot be expected hold down a job because this finding

evidences that she cannot persist on a job.  (Doc. 10, 6.)  Plaintiff is implying here that a

finding of moderate limitations on concentration, persistence, or pace mandate a finding

of disability.  Plaintiff's argument is a gross oversimplification of the purpose of the

"maintaining concentration, persistence, or pace" analysis in 20 C.F.R. Part 404,

Subpart P, Appendix 1.[6]  In support of her argument, Plaintiff cites *Ealy v.*

*Commissioner*, 594 F.3d 504, 515–17 (6th Cir. 2010), but no such rule exists in *Ealy*.[7]

As such, Plaintiff's argument is not well taken.  This part of Plaintiff second objection is

overruled along with the entirety of this second objection.[8]

  **D.** **Third Objection**

 Plaintiff's third objection maintains that the Magistrate Judge and the ALJ erred

by not finding carpal-tunnel-syndrome limitations.  Plaintiff argues that because carpal

tunnel syndrome affected her ability to work for much longer than twelve months, she is

---

[6] *See Rabbers v. Commissioner Social Security Administration*, 582 F.3d 647, 651–54 (6th Cir. 2009) for an explanation of how "maintaining concentration, persistence, or pace" and the other "Paragraph B criteria" of Part 404, Subpart P, Appendix 1 relate to a finding of disability within the meaning of the Social Security Act.

[7] The Court must assume that Plaintiff cited *Ealy* by mistake–nothing in *Ealy* comes close to supporting the rule that Plaintiff cites it for.  *See Ealy*, 594 F.3d 504.

[8] Note that Plaintiff's further objections about Dr. Semmelman's finding of Plaintiff's credibility and that Dr. Semmelman did not review Dr. Alshami's records (Doc. 10, 7) were specifically addressed by this Court above in §§ II.B and II.C.2.  There is no need to repeat that analysis.  Similarly, Plaintiff also argues that the "errors of law in not considering the records submitted after Dr. Semmleman's [sic] paper review of the file in April, 2007 do not come within any 'zone of choice' in this case, as this is an error of law."  (Doc. 10, 7.)  This was also dealt with in § II.C.2.  Because neither the ALJ nor the Magistrate Judge made an error of law in this respect, this objection is overruled.

therefore disabled under 20 C.F.R. § 404.1505, which defines disability in relation to impairments that last for longer than twelve consecutive months. (Doc. 10, 7.) In response to this same argument, Magistrate Judge Wehrman stated as follows:

> Plaintiff asserts that she had a history of wrist pain since 2003, and underwent left and right carpal tunnel surgeries in November and December 2007. She maintains that she continued to experience swelling in January 2008. However, the objective medical evidence of records does not reveal any limitations due to carpal tunnel syndrome. Notably, in January 2008, Dr. Foad found full range of motion in her fingers and no significant swelling (contrary to Plaintiff's allegation). (Tr. 614). Moreover, the ME [medical expert] testified that Plaintiff's carpal tunnel syndrome did not result in any functional limitations. (Tr. 26, 757).
>
> . . . .
>
> More importantly, Plaintiff fails to assert how she is limited by [carpal tunnel syndrome] and/or that such impairment[ ] is disabling. See *Young v. Secretary of Health and Human Services*, 909 F.2d 146, 151 (6th Cir. 1990) (a claimant must do more to establish a disabling impairment than merely show the presence of an impairment). Accordingly, the undersigned finds that the ALJ did not err in evaluating Plaintiff's carpal tunnel . . . .

(Doc. 9, 13.) This Court agrees, and it finds further analysis unnecessary. Even if Plaintiff's carpal tunnel has "affected the ability to work" (Doc. 10, 7) for longer than twelve months, that does not inevitably lead to a determination of disability as Plaintiff maintains. Nothing in the 20 C.F.R. § 404.1505 definition of disability supports this contention. Accordingly, this argument is overruled.

Plaintiff also faults the ALJ for not finding carpel tunnel limitations despite the fact that Plaintiff "testified that her hands hurt and went numb on her" at the July 2008 hearing. (Doc. 10, 7–8.) However, testimony alone does not establish disability. *Townsend v. Sec'y of Health & Human Servs.*, 762 F.2d 40, 44 (6th Cir. 1985) ("'[A]n

individual's statement of his symptoms alone is not enough to establish an

impairment.'") (*citing* 20 C.F.R. § 404.1528(a)).  This objection is overruled.

Finally, in relation to the ALJ's consideration of Plaintiff's carpal tunnel syndrome,

Plaintiff faults the ALJ for not asking "the vocational expert about any limitations on the

use of the hands and wrists to work."  (Doc. 10, 8.)  The record reflects that the ALJ did

not ask the vocational expert any questions that included carpal-tunnel-syndrome

limitations.  (Tr. 759–62, 762–65.)

Regardless, a vocational expert's testimony has a limited purpose.  The

Commissioner (or an ALJ as occurred here) has the responsibility of determining a

claimant's RFC.  20 C.F.R. § 404.1520(e).  The ALJ uses this RFC determination to

pose hypothetical questions to a vocational expert.  *Poe v. Comm'r of Soc. Sec.*, 324 F.

App'x 149, 157 (6th Cir. 2009).  "The testimony of a vocational expert 'must be given in

response to a hypothetical question that accurately describes the plaintiff in all

significant relevant respects; for a response to a hypothetical to constitute substantial

evidence, each element of the hypothetical must accurately describe the claimant.'"

*Grecol v. Halter*, 46 F. App'x 773, 776–77 (6th Cir. 2002) (*citing Felisky v. Bowen*, 35

F.3d 1027, 1036 (6th Cir. 1994)).  Thus, because the ALJ here concluded that Plaintiff's

carpal tunnel syndrome was not a "significant" part of an accurate description of

Plaintiff, there was no need for him to include it in a hypothetical.  If the ALJ's

conclusion was correct—if Plaintiff's carpal tunnel syndrome was not a significant

limitation—Plaintiff's objection about an improper hypothetical is futile because no such

hypothetical would have been required.  Therefore, because the ALJ here did not

include any carpal-tunnel-syndrome limitations in his hypothetical question to the

vocational expert, Plaintiff must really be arguing that the ALJ's determination of Plaintiff's carpal-tunnel-syndrome limitations was faulty. *See e.g. Grecol v. Halter*, 46 F. App'x 773, 776–779 (6th Cir. 2002) (demonstrating that an objection to an improper hypothetical is essentially an objection to the improper exclusion of relevant medical evidence).

This objection—that the ALJ erred in evaluating Plaintiff's carpal tunnel syndrome—has already been considered and overruled. The Magistrate Judge overruled this objection by finding that "the ALJ did not err in evaluating Plaintiff's carpal tunnel" (Doc. 9, 13), and this Court agreed above. Therefore, Plaintiff's contention that the ALJ erred by not including carpal-tunnel-syndrome limitations in his hypothetical question is overruled. With all of Plaintiff's specific arguments considered and overruled, Plaintiff's third objection is overruled.

### E.    Fourth Objection

Plaintiff's fourth and final overall objection is that the Magistrate Judge and ALJ erred in evaluating Plaintiff's credibility. Here, Plaintiff argues that her testimony was credible, and thus, a finding of disability was required. (Doc. 10, 8.) This argument is unavailing. "[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Furthermore, a reviewing court must "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Id.* (*citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). However, an ALJ's credibility

20

determinations must be supported by "substantial evidence."  *Cruse v. Comm'r of Soc. Sec.*, 503 F.3d 532, 542 (6th Cir. 2007) (*citing Walters*, 127 F.3d at 531).  Additionally, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so.  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  Therefore, the issues here become whether the ALJ's credibility determinations were supported by substantial evidence and whether he clearly stated reasons for rejecting Plaintiff's testimony as incredible.  *Id.*

The barrier to Plaintiff's objection is that her credibility was only a small factor in the ALJ's decision.  Plaintiff argues that if her testimony was credible, a finding of disability must inevitably follow (Doc. 10, 8), but nothing in Plaintiff's testimony reflects such a sweeping conclusion.  (*See* Tr. 725–42.)  A review of the record reveals that Plaintiff's testimony was largely consistent with the objective evidence in the record.  During Plaintiff's testimony, she reviewed and discussed her various ailments and limitations, but little of that testimony conflicted with the ALJ's ultimate finding of non-disability.  (Tr. 725–42.)

The ALJ's only credibility challenges were to her allegations of headaches, abdominal pain, and sleep apnea.  (Tr. 27; Tr. 738, 739; Tr. 733, 739; Tr. 733, 737.)  And the ALJ properly addressed each of these by stating the following:

> Allegations of headaches expressed during the hearing are not supported by objective medical evidence or clinical findings.  It has not been shown that headaches occur at a frequency that would affect the claimant's ability to do basic work-related functions or that such symptom is of a severity that would constitute 'severe' impairment for Social Security purposes.  The same is true for complaints of abdominal pain expressed at the hearing.  There are references to sleep apnea in the record but it has not been shown by substantial evidence that sleep apnea constitutes 'severe'

impairment.

(Tr. 27.)  Here, the ALJ's credibility determinations were supported by substantial

evidence and his reasoning was clearly stated.  *See Felisky*, 35 F.3d at 1036.  Plaintiff

tries to make this a larger issue, implying that Plaintiff's credibility was challenged on

numerous important questions (*see* Doc. 10, 8), but that is not the case.  As the record

reflects, Plaintiff's credibility was only a minor factor in the ALJ's decision.  (*See* Tr. 18–

35; Tr. 725–42.)  Thus, this objection is overruled, and all of Plaintiff's fourth and final

objection is overruled as well.[9]


III.     **Conclusion**

This Court finds that the ALJ has applied the correct legal standards and that the

ALJ has made findings supported by substantial evidence.  Therefore, the ALJ's

decision must be affirmed.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir.

2004) ("[A] Court must affirm the [ALJ's] conclusions absent a determination that the

[ALJ] has failed to apply the correct legal standards or has made findings of fact

unsupported by substantial evidence in the record."); *Stanley v. Sec'y of Health &

Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994) ("Where the record as a whole contains

substantial evidence to support the [ALJ's] determination the [ALJ's] decision must be

affirmed.").

Based on the foregoing, the Report (Doc. 9) is hereby ADOPTED.  The ALJ's

---

[9] Note that Plaintiff's other arguments under her fourth overall objection have already been dealt with.
Plaintiff's substantial-evidence-standard argument was rejected above in § II.B.  Plaintiff's argument
about Dr. Semmelman having found Plaintiff's complaints to be credible was also considered and rejected
in § II.B.  Plaintiff's argument about a lack of objective findings related to Plaintiff's depression was dealt
with in § II.C.2.  And finally, Plaintiff's argument about the ALJ's daily-activities evaluation was sufficiently
addressed above in § II.B and in detail by Magistrate Judge Wehrman (Doc. 9, 14–16).  There is no need
to repeat any of this analysis here.

decision is AFFIRMED, and this matter is hereby CLOSED.

       **IT IS SO ORDERED**.

_s/Michael R. Barrett_
United States District Judge
